**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY,** | |
| Plaintiff, | Civil Action 7:09-CV-76 (HL) |
| v. | |
| **LLOYD J. LEBLANC JR., THE B&F SYSTEM, INC., EDNA G. LEBLANC, PRODUCTOS MEXICANOS DON JOSE, INC., LEBLANC'S LLC, MAXAM WHOLESALE OF GA, INC., DIRECT SOURCE IMPORTS, INC., JEFF LEBLANC, and LLOYD LEBLANC III,** | |
| Defendants. | |

**ORDER**

This case is before the Court on State Farm Fire and Casualty Company's

Second Motion for Summary Judgment (Doc. 85). For the reasons set out below,

the Motion is granted.[1]

---

[1] Defendants Lloyd LeBlanc Jr., Edna G. LeBlanc, Maxam Wholesale of Atlanta, Inc. (mis-named in the caption as Maxam Wholesale of GA, Inc.), Lloyd ("Jody") LeBlanc III, Jeff LeBlanc, Direct Source Imports, Inc., Productos Mexicanos Don Jose, Inc., and LeBlanc's, LLC are collectively referred to as the "LeBlanc Defendants." The term "Defendants" includes the LeBlanc Defendants and The B&F System, Inc.

The jury in the underlying case did not find any liability on the part of LeBlanc's, LLC. Final judgment on all claims was entered in favor of LeBlanc's, LLC on July 10, 2012.

## I.      BACKGROUND

On December 6, 2007, Defendant The B&F System, Inc. ("B&F") filed a lawsuit in this Court against Lloyd J. LeBlanc Jr., Maxam Wholesale of Atlanta, Inc. ("MWA"), Direct Source Imports, Inc. ("DSI"), Jeff LeBlanc, and Jody LeBlanc, in what became Civil Action No. 7:07-CV-192. On May 4, 2010, B&F filed an amended complaint against Lloyd, MWA, DSI, Jeff, and Jody, and added Edna G. LeBlanc, Productos Mexicanos Don Jose, Inc. ("PMDJ"), and LeBlanc's LLC as defendants.

The underlying complaint relates to a former business relationship between Lloyd and B&F. The complaint alleges that on November 21, 1986, B&F and Lloyd entered into a distributor agreement (the "MIDA") and licensing agreement (the "SMLA") which licensed Lloyd to use the name Maxam to conduct certain business. Lloyd began doing business in Tifton as Maxam Wholesale of GA, a sole proprietorship.

In 1991, Lloyd bought another Maxam branch, this one located in Atlanta. For a period of time Lloyd operated both the Atlanta and Tifton locations. Lloyd eventually combined the businesses, initially operating one facility in Atlanta. Around 1996, Lloyd moved the business to Tifton. The combined entity became known as Maxam Wholesale of Atlanta, which remained a sole proprietorship.

In 2004, Lloyd incorporated the business and created Maxam Wholesale of Atlanta, Inc. ("MWA"). Jeff and Jody LeBlanc worked for MWA, and their paychecks were drawn on that corporation's accounts. Edna was responsible for bookkeeping, balancing the checkbook, and preparing end of the year tax paperwork, but she was never formally paid by Lloyd or MWA for her efforts.

The underlying complaint revolves around allegations that Lloyd, Edna, Jeff, and Jody worked in concert to start up DSI to compete directly with B&F. The complaint alleges that DSI is in the same business as B&F, has patterned its business to mirror that of B&F, and has used B&F's marks and confidential data to usurp B&F's business contacts and customers. A three-week long trifurcated trial was held in the underlying case, and the jury entered verdicts on January 23 and February 3, 2012. The jury found that Lloyd breached the MIDA; that Lloyd breached the SMLA; that PMDJ, DSI, Jeff, Jody, and Edna all tortiously interfered with the MIDA; that PMDJ and DSI tortiously interfered with the SMLA; that Lloyd, Jeff, Jody, Edna, MWA, DSI, and PMDJ infringed on B&F's MAXAM registered trademark; that Lloyd, Jeff, Jody, Edna, MWA, DSI, and PMDJ infringed on B&F's lid knob trademark; that Lloyd, Jeff, Jody, Edna, MWA, DSI, and PMDJ infringed on B&F's "Maxam Wholesale" trademark; that Jeff, Jody, DSI, and PMDJ were liable for false designation of origin/unfair competition and violations of the Georgia Uniform Deceptive Trade Practices Act; that Jeff

committed cyberpiracy; that Lloyd, Edna, Jeff, and Jody engaged in a civil conspiracy; that DSI and PMDJ engaged in a common business enterprise; that Jody and Jeff should be held personally liable for torts committed by PMDJ and DSI; and that Jody and Jeff should be held personally liable for trademark infringement or false designation of origin/unfair competition committed by PMDJ and DSI. Final judgment on the jury's verdict was entered on July 10, 2012. The underlying case is currently on appeal.

This declaratory judgment action was initially filed on June 16, 2009. After a lengthy stay of the case, State Farm moved for summary judgment. That motion was granted by the Court on March 1, 2012. The LeBlanc Defendants appealed the order, and in October of 2012, the Eleventh Circuit Court of Appeals reversed and remanded the case in part for the Court to consider whether State Farm owes indemnity or a duty of defense to the LeBlanc Defendants under a business policy issued to Lloyd LeBlanc Jr. d/b/a Maxam Wholesale of GA and a personal liability umbrella policy issued to Lloyd. State Farm has again moved for summary judgment.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a). "The moving party bears 'the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2549 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). The court is bound only to draw those inferences which are

reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

## III.   ANALYSIS

### A.   The PLUP Policy

The first insurance policy at issue is a personal liability umbrella policy, Policy Number 81-NQ-9486-0, issued by State Farm to Lloyd LeBlanc Jr., which was in effect from July 10, 2006 to July 10, 2007 (the "PLUP Policy").

State Farm argues several reasons why there is no coverage available for any of the LeBlanc Defendants under the PLUP Policy. First, State Farm contends that Jeff, Jody, DSI, PMDJ, and MWA do not qualify as insureds under the PLUP Policy. Second, State Farm argues that the underlying lawsuit contains no allegations of covered damages, as the PLUP Policy only covers bodily injury, property damage, and personal injury. Finally, State Farm argues that the PLUP Policy's business pursuits exclusion precludes coverage.

Defendants did not address the PLUP Policy in their responses to State Farm's motion, and therefore, they have abandoned any claim for coverage

under the PLUP Policy. <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1322 (11th Cir. 2001); <u>Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.</u>, 10 F.3d 1563, 1568 (11th Cir. 1994) (claims not addressed in response to summary judgment motion deemed abandoned).

Thus, State Farm does not owe the LeBlanc Defendants a defense or indemnity under the PLUP Policy. Summary judgment is granted in State Farm's favor as to the PLUP Policy.

**B.    The LeBlanc Business Policy**

The second policy is a business policy issued to Lloyd LeBlanc d/b/a Maxam Wholesale of GA, Policy Number 91-NM-7119-2, which was in effect from May 14, 2007 to May 14, 2008 (the "Business Policy").

State Farm offers a slew of reasons why there is no coverage available under the Business Policy. First, State Farm argues that the LeBlanc Defendants do not qualify as insured under the Business Policy for the actions complained of in the underlying litigation. Second, State Farm argues that there are no allegations of covered damages under the terms of the Business Policy, as there was no bodily injury or property damage, or any personal or advertising injury. Third, State Farm argues that even if there was an advertising injury, the claims would be excluded under the terms the Business Policy. Finally, State Farm argues that there is no coverage provided under the Business Policy for the

Lanham Act, Uniform Deceptive Trade Practices Act, breach of the SMLA, tortious interference with the SMLA, and civil conspiracy and common enterprise claims asserted in the underlying action.

As with the PLUP Policy, Defendants did not address certain of State Farm's arguments in their responses to State Farm's motion, and therefore, they have abandoned certain claims for coverage under the Business Policy. The remaining coverage questions for the Court's consideration are: (1) whether Lloyd, Edna, Jeff, Jody, and MWA qualify as insureds under the Business Policy for the remaining allegations against them;[2] (2) whether there has been an advertising injury under the Business Policy; and if so, whether any such advertising injury is excluded under certain policy exclusions; and (3) whether the breach of the Service Mark License Agreement is considered an occurrence under the Business Policy. Because the Court answers the first question in the negative, it is not necessary to address the other two questions.

## 1.    Insureds under the Business Policy

With respect to who qualifies as an insured, the Designation of Insured subpart of Section II of the Business Policy states in pertinent part as follows:

---

[2] The remaining allegations against Lloyd, Edna, Jeff, Jody, and MWA are: (1) Lanham Act and breach of the SMLA claims against Lloyd; (2) Lanham Act claims against Edna; (3) Lanham Act claims against Jeff; (4) Lanham Act claims against Jody; and (5) Lanham Act claims against MWA.

WHO IS AN INSURED

1.     If you are designated in the Declarations as:

       a.     an individual, you and your spouse are insureds but only with respect to the conduct of a business of which you are the sole owner;

       b.     a partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds but only with respect to the conduct of your business;

       c.     an organization other than a partnership or joint venture, you are an insured. Your executive officers, directors and trustees are insureds but only with respect to their duties as your officers, directors or trustees. Your stockholders are also insureds but only with respect to their liability as stockholders.

2.     Each of the following is also an insured:

       a.     your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

              (1)     bodily injury or personal injury to you or to a fellow employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that fellow employee as a consequence of such bodily injury or personal injury or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

              (2)     bodily injury or personal injury arising out of his or her providing or failing to provide professional health care services;

(3)    property damage to property owned or occupied by or rented or loaned to that employee, any of your other employees or any of your partners or members if you are a partnership or joint venture; or

(4)    bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any non-owned auto or any agent or employee of an owner of any non-owned auto;

b.    any person, other than your employee, or any organization while acting as your real estate manager;

c.    any person or organization having proper temporary custody of your property if you die but only:

(1)    with respect to liability arising out of the maintenance or use of that property; and

(2)    until your legal representative has been appointed.

d.    your legal representative, if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

\*\*\*\*\*

4.    Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest will qualify as a Named Insured if there is no other similar insurance available to that organization. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier. However, no person or organization is an insured with respect to:

a.    bodily injury or property damage that occurred before you acquired or formed the organization; and

b.    personal injury or advertising injury arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

(Doc. 1-2, pp. 30-31) (emphasis omitted).

### a.    MWA

The named insured on the Business Policy is Lloyd LeBlanc d/b/a Maxam Wholesale of GA. This was a sole proprietorship. MWA is a corporation. The allegations asserted in the underlying complaint relate to the corporation, not the sole proprietorship. State Farm argues under Georgia law, MWA is a separate and distinct legal entity from Lloyd or the sole proprietorship, and any judgment entered against MWA would not be covered under the Business Policy issued to Lloyd individually or as a sole proprietor. Instead, MWA should have purchased its own insurance policy.

The LeBlanc Defendants argue in response that Edna told State Farm's agent that "we got a new company name, Maxam Wholesale of Atlanta" (Deposition of Edna LeBlanc, p. 15), that Lloyd told State Farm's agents about MWA, and that Lloyd and Edna were assured that they had sufficient coverage.

The LeBlanc Defendants contend that because State Farm's agents knew of the incorporation but failed to amend the declaration page, State Farm is estopped from arguing that MWA is not an insured under the policy. The LeBlanc Defendants further argue that State Farm cannot now attempt to deny coverage to MWA on the basis that the named insured was not switched to the corporation because State Farm accepted premium payments from MWA for 17 years.

In reply, State Farm states that it was Lloyd's duty to review his policy and determine whether the coverage requested was procured. The declarations page clearly states that the named insured is Lloyd LeBlanc d/b/a Maxam Wholesale of GA. There is no mention of MWA. Further, State Farm argues, the LeBlanc Defendants have not presented any evidence of any formal request for coverage for the corporate entity, and incorporating a new entity would have affected coverage. Finally, State Farm argues that any representations made by its agents do not create coverage.

"[T]he construction of insurance policies, and, therefore, the scope of coverage, are matters of state law." Miller v. Harco Nat'l Ins. Co., 274 Ga. 387, 390, 552 S.E.2d 84, 851 (2001) (quoting T.H.E. Ins. Co. v. Larsen Intermodal Servs., 242 F.3d 667, 674(II)(A)(1) (5th Cir. 2001)). Accordingly, in support of its argument that MWA is not an insured, State Farm relies on two Supreme Court

of Georgia cases, <u>Shelby Insurance Co. v. Ford</u>, 265 Ga. 232, 454 S.E.2d 464 (1995), and <u>Miller v. Harco National Insurance Co.</u>, 274 Ga. at 387.

In <u>Shelby Insurance Co.</u>, a child was injured on the premises of a day care center operated by KDC, Inc., a corporation owned by the appellee and her husband. The corporation had no insurance coverage, but the appellant insurance company had issued to the appellee individually a policy which provided coverage to her as an individual "only with respect to the conduct of a business of which you are the sole owner." 265 Ga. at 233. The insurance company denied coverage under the policy because the entity operating the day care center was not a named insured under the policy.

The Georgia Court of Appeals found in favor of the appellee insured, holding that since the appellee was the sole owner of the business entity in question, both she and the corporate entity were the named insured. <u>Shelby Ins. Co. v. Ford</u>, 212 Ga. App. 303, 441 S.E.2d 764. In other words, the appellate court determined that the owner of a corporation is necessarily the owner of the business operated by the corporation.

The Georgia Supreme Court reversed, finding that the Court of Appeals' holding "ignores both the language of the insurance policy and the basic premise of law pertaining to corporations, that they are entities distinct from their owners. The courts of this state have said many times that a corporation and its owner,

even a sole owner, are separate and distinct." 265 Ga. at 233.[3] The Supreme Court held that the fact that the appellee owned the corporation did not change the fact that the corporate owner of the child care business was distinct from the appellee as an individual. "It was with Cain, as an individual, that appellant contracted to provide insurance coverage, and that contract cannot be enlarged by the court to include as a named insured a wholly distinct legal entity." Id. at 465-66.

In Miller, the other case relied upon by State Farm, the Georgia Supreme Court was faced with certified questions from the Eleventh Circuit Court of Appeals concerning coverage issues in the context of a motor vehicle accident. The Supreme Court noted that "[a]n individual doing business under a trade name is clearly a sole proprietor distinct under Georgia law from a corporation in which that individual holds stock." 274 Ga. at 390 (citations omitted). Citing to

---

[3] "No hard and fast rule can be laid down, but it seems clear that so long as the law authorizes the formation of subservient corporations, the law would defeat its own purpose by disregarding its own creature merely because a parent corporation, or other sole owner, controls the subsidiary, or one-man corporation, and uses it and controls it to promote his or its ends. [Cit.]" ITT Bus. Servs. Corp. v. Roberts, 184 Ga. App. 764, 767, 362 S.E.2d 496 (1987).

"[A] corporation is an artificial person created by law. The corporate identity is entirely separate from the identity of its officers and stockholders. A corporation and even its sole owner are two separate and distinct persons. [Cit.]" Thrift v. Maxwell, 162 Ga. App. 237, 239, 290 S.E.2d 301 (1982).

"One person may own all the stock of a corporation, and still such individual shareholder and the corporation would, in law, be two separate and distinct persons. [Cits.]" Keller v. Bldg. Prods. v. Young, 137 Ga. App. 682(1)(b), 224 S.E.2d 815 (1976).

Shelby Insurance Co., the Court stated that "[i]f an insurer contracts to provide insurance coverage to a sole proprietor, the courts cannot enlarge the contract to include as a named insured the wholly distinct legal entity of a corporation, even if the sole proprietor owns a majority of stock thereof." Id. The court went on to respond to the Eleventh Circuit's first certified question, which inquired whether an insurance policy provides coverage for final judgments against a corporation when it only specifies coverage for final judgment against a sole proprietorship, as follows: "Although a policy provides coverage for final judgments recovered against the insured, it generally does not cover final judgments against a corporation in which the insured is the controlling stockholder. Because corporations and their shareholders are separate and distinct entities, insurance coverage for final judgments against the latter cannot ordinarily be enlarged to include final judgments against the former." Id.

"The general rule is that [a]n action on a policy of insurance or on a written binder must be brought in the name of the holder of the legal title thereto. Generally, one other than the person to whom it was issued can not, in his own name, maintain an action thereon, unless the policy has been duly assigned to him in writing." U.S. Homes Assistance Corp. v. S. Guaranty Ins. Co., 131 Ga. App. 676, 678, 206 S.E.2d 555 (1974). Here, there was no insurance contract between MWA and State Farm. There was no written assignment or transfer of

the policy.[4] State Farm agreed to provide coverage to Lloyd LeBlanc as a sole proprietor. Lloyd and MWA are separate legal entities. Under Shelby Insurance Co., Miller, and U.S. Homes, this Court is restrained to find that there is no coverage available to MWA under the Business Policy. The Court cannot enlarge the Business Policy to "include as a named insured a wholly distinct legal entity." Shelby Ins. Co., 265 Ga. at 234.[5]

However, the LeBlanc Defendants argue that under State Farm Fire & Casualty Co. v. Mills Plumbing Co., Inc., State Farm should be required to insure MWA. 152 Ga. App. 531, 263 S.E.2d 270 (1979). In Mills Plumbing, a plumbing business was initially established as a partnership. The partnership secured insurance coverage. The partnership later incorporated. There was no formal notification to the insurer of the incorporation, but the business continued its operations in the same manner as before. Subsequent to the incorporation, the insurance company audited the business to determine whether or not its premiums should be adjusted. The audit revealed that the incorporation had resulted in several changes which could have affected future premiums. The

---

[4] The Business Policy contains a provision which states the insured's rights and duties under the policy may not be transferred without State Farm's written consent except in the case of death of an individual Named Insured. (Doc. 1-2, p. 39).

[5] Subpart 4 of the Who is an Insured provision would not create coverage for MWA for two reasons. One, other insurance would be available to MWA, and two, the 90-day period of coverage would have expired in 2005. In any event, the LeBlanc Defendants did not argue that this subpart would have created coverage.

changes were reflected on the audit work sheets which clearly designated that the audit had been conducted on a corporate entity. The work sheets were submitted to the insurance company, where they were reviewed and became the basis for an upward adjustment of the premiums. The increased premiums were paid with checks drawn on the corporate account. Id.

In a declaratory judgment action to determine whether coverage was available to the corporation under the policy, the Court of Appeals held:

> Under these circumstances it cannot be said, as a matter of law, that the insurer has not "consented" to the assignment of the policy by the partnership to the corporation or that the insurer has not, by its actions, waived the policy requirement that assignments be endorsed on the face of the policy. When the insurer received the audit report, it knew or should have known that the partnership had been replaced by the corporation. At that point, the insurer chose not to treat the policy as no longer in force, but, rather increased the premiums due thereunder, for reasons based upon the fact of that incorporation.

Id. at 533.

The Court of Appeals emphasized that the insurer had "elected to treat the corporation as the assignee of the policy and has enjoyed the benefits of that election, in the form of higher premiums received from the corporation and retained by the insurer." Id. at 536. Therefore, because the insurer had in effect treated the policy as assigned to the corporation, the insurer was estopped from arguing that there had to be a formal written assignment of the policy. Id. at 537.

17

The Court finds Mills Plumbing distinguishable from the facts presented in this case, and therefore inapplicable. Mills Plumbing involved a switch from a partnership to a corporation, two business entities. Here, there was a change from a sole proprietorship to a corporation. There was nothing conducted by State Farm like the insurer's audit in Mills Plumbing, and there is no evidence of a premium adjustment made because of the incorporation of the business.

As for the payment of the premiums, the evidence presented by the LeBlanc Defendants does not advance their cause. In her affidavit dated November 8, 2011, Edna LeBlanc stated that "[f]rom a period beginning approximately 1990 and extending through 2007, Maxam Wholesale of Atlanta paid State Farm Fire & Casualty Company each year for comprehensive business coverage. . . .The premiums were paid by Maxam Wholesale of Atlanta." (Affidavit of Edna G. LeBlanc, ¶ 5). But what is important is what Edna did not say. She does not say that the payments came from MWA the corporation. Instead, the payments came from Maxam Wholesale of Atlanta, which was the trade name used by Lloyd for 14 years before the incorporation. Further, the payment documentation attached to the affidavit shows that the payments were made by Maxam Wholesale of Atlanta. The canceled checks and other documentation do not reflect that the payments came from a corporate

account. The payments would not have put State Farm on notice of MWA's existence.

There is one other piece of evidence attached to the affidavit that in the Court's opinion distinguishes this case from <u>Mills Plumbing</u>. The Business Policy at issue was for the time period of May 14, 2007 through May 14, 2008. The premium due for that term year was $5,815.11. On May 23, 2007, Lloyd LeBlanc charged that premium payment to his personal credit card. (Doc. 53-1, p. 5). There is no mention of Maxam Wholesale of Atlanta or MWA whatsoever in connection with that premium payment. Thus, in making the payment for the policy under which the LeBlanc Defendants now seek coverage, Lloyd was acting as an individual. The payment was not charged to a corporate credit card. There is no reason State Farm would have been put on notice that coverage was really being sought or purchased for MWA rather than Lloyd as a sole proprietor. The Court finds that no valid assignment of coverage to MWA occurred.

The LeBlanc Defendants' other argument is that State Farm is estopped from arguing that MWA is not an insured under the Business Policy because its agents knew of the incorporation but failed to secure proper coverage. However, the cases relied upon by the LeBlanc Defendants do not deal with the question of whether a person or entity is a named insured under a policy. Instead, <u>Christian v. Allstate Ins. Co.</u>, 239 Ga. 850, 239 S.E.2d 328 (1977), involved a denial of

coverage on the basis of nonownership of a car, and Georgia Farm Bureau Mutual Insurance Co. v. Wall, 242 Ga. 176, 249 S.E.2d 588 (1978), is not an estoppel case, but rather involved a lawsuit for reformation of a contract based upon alleged mutual mistake. In any event, to the extent the LeBlanc Defendants contend that the insurance agents negligently failed to procure the correct policy of insurance, that is a separate matter between the LeBlanc Defendants and the agents, not the LeBlanc Defendants and State Farm.

"The insured has a duty to read and examine the policy where its examination 'would have made it readily apparent that the coverage requested was not issued.'" Lavoi Corp., Inc. v. Nat. Fire Ins. of Hartford, 293 Ga. App. 142, 149, 666 S.E.2d 387, 393 (2008) (quoting Jim Anderson & Co. v. Partraining Corp., 216 Ga. App. 344, 454 S.E.2d 210 (1995)). In this case, it was readily apparent from the declarations page that there was no coverage for MWA. The onus was on the insured to ensure the coverage and named insured(s) were correct. The LeBlanc Defendants failed to do for years. The Court will not now create coverage for MWA. State Farm does not owe MWA a defense or indemnity under the Business Policy. Summary judgment is granted in State Farm's favor as to MWA's claims under the Business Policy.

### b.    Jeff and Jody LeBlanc

Under the Business Policy, the employees of the named insured are covered, but only for acts within the scope of their employment. The named insured under the Business Policy is Lloyd LeBlanc d/b/a Maxam Wholesale of Atlanta. During the times relevant to the underlying lawsuit, Jeff and Jody LeBlanc were employees of MWA. Because they were not employed directly by the named insured, and because the Court will not extend coverage to MWA, Jeff and Jody LeBlanc do not qualified as insureds under the Business Policy. State Farm does not owe Jeff or Jody LeBlanc a defense or indemnity under the Business Policy. Summary judgment is granted in State Farm's favor as to Jeff and Jody LeBlanc's claims under the Business Policy.[6]

### c.    Lloyd LeBlanc

There is no dispute that Lloyd LeBlanc is the named insured on the Business Policy. However, the policy only provides coverage "with respect to the conduct of a business of which you are the sole owner." State Farm argues that the claims in the underlying litigation and Lloyd's actions associated with those claims were not related to the conduct of Lloyd's business, but instead were done

---

[6] The Court also agrees with State Farm that Jeff and Jody LeBlanc were not acting within the scope of their employment with respect to the claims asserted in the underlying litigation. Instead they were engaging in a private enterprise by setting up a competing business. There simply is no way to find that Jeff and Jody's actions in any way advanced the interests of their employer.

in an effort to assist Jeff and Jody LeBlanc set up a business which would directly compete with Lloyd's business.

The Court agrees with State Farm. The liability to which Lloyd was subjected in the underlying case had nothing to do with his conduct of MWA or Maxam Wholesale of Atlanta. He even testified that his actions in loaning money to Jeff and Jody and renting them space for their competing business were done "with the dad hat on" and not as the owner of Maxam Wholesale of Atlanta. (Deposition of Lloyd LeBlanc, p. 34). The loans made and lines of credit signed for Jeff and Jody to purchase products for their competing business were done in Lloyd's name personally, not the business' name. All the actions alleged in the underlying complaint were taken in an effort to set up Jeff and Jody's new business, not in furtherance of MWA or Maxam Wholesale of Atlanta.[7] "The phrase 'conduct of the business' requires a focus on the purported insured's activity in determining whether the conduct of the business owner was business or personal." <u>Nova Cas. Co. v. Anderson</u>, No. 804CV2085T27TGW, 2005 WL

---

[7]     Q:     And when you were loaning your sons money and renting them the space and you were doing that as their father and not as the Maxam owner, was that furthering your business in any way, or was that just dad helping his kids?

        A:     Just dad helping the kids.

        Q:     And it didn't further your business in any way?

        A:     No.

(Deposition of Lloyd LeBlanc, p. 39).

3336496, at * 4 (M.D. Fla. Dec. 8, 2005) (citing Society Ins. v. Linehan, 238 Wis.2d 359, 364-65, 616 N.W.2d 918 (Wis. App. 2000)). Lloyd LeBlanc's actions were personal pursuits, not business activities performed for the purpose of the business.

This is a good point to address the LeBlanc Defendants' argument that the jury's finding that there was a civil conspiracy between Lloyd, Edna, Jeff, and Jody somehow creates insurance coverage for all of them. The fact that one member of the conspiracy was insured does not mean there is suddenly insurance coverage for all the members of the conspiracy. The LeBlanc Defendants have not presented any statutory or case law supporting such a proposition, and the Court has found none on its own. Further, the Court is at a loss as to how the conspiracy finding means all of Lloyd's actions would have to be construed as actions taken to advance the business interests of his business, as argued by the LeBlanc Defendants. There was no finding that MWA was involved in a conspiracy, as that was only alleged against the individual Defendants. In addition, there was no finding that MWA engaged in a common business enterprise with any other corporate defendant, as B&F specifically withdrew that contention before the case went to the jury in Phase II of the trial and MWA is not included on the verdict form as to the common business enterprise claim.

The Court finds that State Farm does not owe Lloyd LeBlanc a defense or indemnity under the Business Policy. Summary judgment is granted in State Farm's favor as to Lloyd LeBlanc's claims under the Business Policy.

### d.    Edna LeBlanc

The Business Policy provides coverage to an individual named insured and his spouse, but only with respect to the conduct of a business of which the insured is the sole owner. For the same reasons set out above with respect to Lloyd, namely that the allegations and liability in the underlying suit had nothing to do with Lloyd's conduct of his business, State Farm does not owe Edna LeBlanc a defense or indemnity under the Business Policy. Summary judgment is granted in State Farm's favor as to Edna LeBlanc's claims under the Business Policy.

## IV.    CONCLUSION

State Farm Fire and Casualty Company's Second Motion for Summary Judgment (Doc. 85) is granted. State Farm does not have a duty to defend or indemnify any of the LeBlanc Defendants under either the PLUP Policy, Policy Number 81-NQ-9486-0, or the Business Policy, Policy Number 91-NM-7119-2. Because judgment is entered in State Farm's favor, the reinstated counterclaim of Jeff LeBlanc, Jody LeBlanc, and DSI is dismissed.

**SO ORDERED**, this 16th day of May, 2012.

/s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**

mbh